IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEGENT COMM, LLC, | § | |
| *Plaintiff,* | § | SA-19-CV-00202-ESC |
| vs. | § | |
| BILLING CONCEPTS, INC., | § | |
| *Defendant.* | § | |

### ORDER

Before the Court in the above-styled cause of action are Defendant Billing Concept, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [#11] and Plaintiff's Motion for Leave to File Second Amended Complaint [#14]. The Court held an initial pretrial conference in this case on June 28, 2019, at which both parties addressed the issues raised by these two motions. After considering the arguments of counsel at the conference, as well as the motions, the various responses and replies filed to the motions, and the governing law, the Court will grant Plaintiff's motion for leave to amend and deny Defendant's motion to dismiss.

### I.  Procedural Background

This is an action for breach of contract arising out of a Services Agreement between Plaintiff Legent Comm, LLC and Defendant Billing Concepts, Inc.  Plaintiff filed its Original Complaint for breach of contract and for an accounting under the parties' Services Agreement on February 28, 2019, alleging diversity jurisdiction.  (Orig. Compl. [#1].)  The District Court promptly issued an order for Plaintiff, as a limited liability corporation, to file an amended

complaint in order to more precisely allege the citizenship of all its members in order to confirm the diversity of Plaintiff and Defendant and this Court's jurisdiction.  (Show Cause Order [#3].) Plaintiff timely filed its First Amended Complaint with these additional jurisdictional allegations on March 5, 2019, which is the current live pleading in this case.  (First Am. Compl. [#7].)

## II.  Plaintiff's Factual Allegations

Plaintiff's First Amended Complaint alleges that Plaintiff is a regulated Interexchange Carrier, a company authorized to provide long-distance telephone service to residential and business customers through the purchase and resale of these telecommunications services.  (First Am. Compl. [#7] at ¶¶ 6, 8.)  Plaintiff's customers are either billed directly for these services by Plaintiff or by having the long-distance charges included as a third-party charge on the bill they receive from the local telephone company providing landline services (known as a Local Exchange Carrier or "LEC").  (*Id.* at ¶¶ 9–11.)

Defendant is one of several operating subsidiaries of Billing Services Group Limited ("BSG"), a British holding company that is publicly traded on AIM (a market operated by the London Stock Exchange plc).  (*Id.* at ¶ 3.)  Defendant is a billing clearinghouse that aggregates third-party telecommunications charges (like the long-distance charges billed by Plaintiff) in order to facilitate the billing by LECs without requiring Plaintiff to negotiate separate agreements with each LEC across the country.  (*Id.* at ¶¶ 12, 15.)

Plaintiff and Defendant entered into the Service Agreement at issue in this lawsuit on September 14, 2001; the agreement has been renewed and amended over the years.  (*Id.* at ¶ 20.) Under this agreement, Plaintiff submits its billing records to Defendant, and Defendant purchases the accounts receivable generated by these bills; Defendant then in turn sells the same accounts receivable to the relevant LEC.  (*Id.* at ¶ 26.)  The LEC distributes the funds received from its

customers less its fees to Defendant, and Defendant then distributes the funds less its fees to Plaintiff.  (*Id.* at ¶ 16.)

In addition to providing billing services to Plaintiff and other providers of long-distance telephone service, Defendant provides billing services to companies that provide "enhanced services," such as website hosting, directory listings, e-mail, voicemail, and streaming video services.  (*Id.* at ¶¶ 32–33.)  These services are unregulated, which has resulted in "cramming"— the practice of placing unauthorized enhanced-services charges on a customer's LEC bill without valid consent.  (*Id.* at ¶¶ 34–37.)

In April 2009, two class action lawsuits were commenced against AT&T and Verizon for cramming stemming from LEC billing originated by Defendant's parent company and other aggregators.  (*Id.* at ¶ 38.)  These cases were settled in 2013.  (*Id.* at ¶ 38.)  As a result of the settlements, Defendant faced an enormous indemnity obligation for the class action claims, fees, and expenses attributable to the enhanced service providers pursuant to its contractual arrangements with the LECs.  (*Id.* at ¶¶ 43, 46.)  Accordingly, beginning in late 2011 (in the case of AT&T) and 2012 (in the case of Verizon), the LECs proactively began imposing assessments on revenue streams generated from Defendant and its parents and affiliates to secure the indemnity obligations to the LECs; i.e., funds were withheld from Plaintiff's accounts receivables to pay for or secure Defendant's indemnity obligations.  (*Id.* at ¶¶ 44, 69.)  Plaintiff alleges that the administration of the settlements with AT&T and Verizon took years to complete and were still ongoing as of September 21, 2018.  (*Id.* at ¶ 59.)

On February 7, 2019, Plaintiff received a letter from Defendant, which presented Defendant's analysis of Plaintiff's account history with respect to the AT&T and Verizon holdbacks and purported to account for and allocate Plaintiff's proportionate share of class action

expenses.  (*Id.* at ¶¶ 79, 80.)  Plaintiff contends this accounting was incomplete and inaccurate and that Plaintiff's own calculations establish that Defendant withheld at least $1.762 million in holdbacks and that Plaintiff's proportionate allocation of shared expenses totaled only $183,310 meaning Defendant owes Plaintiff at least $1.579 million.  (*Id.* at ¶¶ 86–87.)

Plaintiff contends this failure to fully account for and remit to Plaintiff all money that was not used to satisfy Plaintiff's proportionate share of obligations for the class actions constitutes a breach of the parties' Service Agreement.  (*Id.* at ¶¶ 89, 111.)  Plaintiff separately alleges that Defendant breached the Services Agreement by unilaterally imposing a rate increase in the processing fees charged Plaintiff without notifying Plaintiff or obtaining Plaintiff's verbal or written consent.  (*Id.* at ¶¶ 96, 111.)  In addition to its breach of contract cause of action, Plaintiff sues Defendant for an accounting, arguing that Defendant is obligated under the Services Agreement and common law to provide a full and accurate accounting with respect to the holdbacks and the excessive processing fee.  (*Id.* at ¶¶ 116–117.)

Defendant has moved to dismiss Plaintiff's breach of contract claims as to the class action holdbacks and rate increase as barred by the governing statute of limitations.  (Mot. to Dismiss [#11].)  In response, Plaintiff has moved for leave to amend its pleadings and file a Second Amended Complaint adding specificity to the allegations as to the class action holdbacks and an additional breach of contract claim regarding Defendant's failure to properly account for direct billing activity.  (Mot. to Amend [#14].)  Plaintiff attached a proposed Second Amended Complaint to its motion and filed a corrected version of the amended pleading at a later date.  (Second Am. Compl. [#24-1].)

### III.  Analysis

The Court will grant Plaintiff leave to file its Second Amended Complaint and will deny Defendants' motion to dismiss on its merits.

**A.     Motion for Leave to Amend**

The Federal Rules of Civil Procedure favor amendment.  A party may amend its pleading once as a matter of course within 21 days after serving it or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading.  Fed. R. Civ. P. 15(a)(1).  After this time period has passed, a party may amend its pleading with the opposing party's consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  The grant of leave to amend pleadings pursuant to Rule 15(a) is generally within the discretion of the trial court and shall be "freely given when justice so requires."  Fed. R. Civ. P. 15(a); *see also Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997) ("Rule 15 expresses a strong presumption in favor of liberal pleading"); *Dussuoy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981) ("[Rule 15] evinces a bias in favor of granting leave to amend.").  A motion to amend should not be denied unless there is "substantial reason" to do so, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment."  *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

Although Plaintiff seeks to file a Second Amended Complaint, this is Plaintiff's first requested amendment, as the District Court required Plaintiff to file its First Amended Complaint for purposes of establishing diversity jurisdiction.  Plaintiff moved for leave to amend only three months after filing its Original Complaint, prior to this Court holding an initial pretrial

conference, prior to this Court entering a Scheduling Order, and prior to the opening of discovery. Thus, this case does not involve any undue delay or bad faith on the part of Plaintiff.

Nor will Plaintiff's amendment cause Defendant any undue prejudice at this early stage of the litigation. *See id.* Additionally, as is addressed in more detail below, Plaintiff's breach of contract claims based on the holdbacks and rate increase are not time barred based on the allegations in Plaintiff's First Amended Complaint or Second Amended Complaint. Plaintiff's motion for leave to amend is therefore granted.

**B.    Motion to Dismiss**

Defendant moves to dismiss Plaintiff's breach of contract claims regarding the class action holdbacks and the rate increase on the grounds that these claims are time barred. The motion is denied.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Furthermore, a court must accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, a court need not credit conclusory allegations or

allegations that merely restate the legal elements of a claim.  *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief.  *Twombly*, 550 U.S. at 570.

Although limitations is an affirmative defense, a Rule 12(b)(6) motion to dismiss may be granted due to a time bar if the untimeliness appears from the face of the complaint.  *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F .3d 773, 775 n.3 (5th Cir. 1997); *Hilbun v. Goldberg*, 823 F.2d 881, 884 (5th Cir. 1987).  *See also Mann v. Adams Realty Co., Inc.*, 556 F.2d 288, 293 (5th Cir. 1977) ("A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense.")  Under Texas law, "the party asserting a limitations defense bears the burden of proof to not only establish the applicability of the limitations statute, but also prove when the opponent's cause of action accrued in order to demonstrate the bar of limitations." *Hernandez v. Frazier*, No. CV SA:11-CV-0009-DAE, 2014 WL 1390887, at *3 (W.D. Tex. Apr. 9, 2014) (citing *Intermedics v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ refused n.r.e.)); *see also Harrison v. Thompson*, 447 F.2d 459, 460 (5th Cir. 1971).

The parties agree that Texas imposes a four-year statute of limitations on breach of contract claims.  Tex. Civ. Prac. & Rem. Code § 16.051 (setting the limitations period for causes of action not otherwise defined—and thus general breach of contract claims—as four years). Defendant further argues that the parties agreed to a 91-day contractual limitations period in their Service Agreement.  As a preliminary matter, the Court will not enforce the 91-day limitations period set forth in the parties' Service Agreement.  (*See* Service Agreement [#24-1] Ex. 1 at 39.) In Texas, parties may generally agree to limit the time in which a party to a contract may file a

suit under the contract. *Sheppard v. Travelers Lloyds of Texas Ins. Co.*, No. 14-08-0248-CV, 2009 WL 3294997, at *2 (Tex. App.–Houston [14th Dist.] 2009, pet. denied). However, to the extent that a provision "purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years," it is void under Texas law. Tex. Civ. Prac. & Rem. Code § 16.070. Accordingly, even if the Court were to conclude the parties entered a contract to limit the time period for filing claims for breach of contract to 91 days and that agreement governed the claim at issue, it would still find the provision to be void under Texas law.[1]

As to Defendant's four-year limitations argument, Defendant contends that Plaintiff's pleadings establish that the claim related to class action holdbacks accrued in 2011, when Defendant began withholding funds from Plaintiff's accounts receivables, and therefore this claim is time barred. Plaintiff filed its Original Complaint on February 28, 2019, which means that to be timely, its breach of contract claim must have accrued no later than February 28, 2015. *See* Tex. Civ. Prac. & Rem. Code § 16.051. "Generally a cause of action accrues when facts come into existence [that] authorize a claimant to seek a judicial remedy, when a wrongful act causes some legal injury, or whenever one person may sue another." *American Star Energy &Minerals Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015) (internal quotation omitted). "It is well-settled law that a breach of contract claim accrues when the contract is breached" and in most circumstances is not delayed by the discovery rule. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). Defendant has not carried its burden to prove that Plaintiff's pleadings

---

[1] The only basis for dismissal of Plaintiff's breach of contract claim based on Defendant's rate increase is the 91-day contractual limitations period. (*See* Motion to Dismiss [#11] at 8.) Because this provision is void under Texas law, the Court will not grant Defendant's motion to dismiss as to this claim.

establish on their face that Plaintiff's breach of contract claim accrued in 2011 or any other time before February 28, 2015.

Plaintiff's First and Second Amended Complaints allege that Defendant began withholding funds from Plaintiff's accounts receivables in 2011 (as to Verizon) and 2012 (as to AT&T) to secure Defendants' indemnity obligations to the LECs.  (First Am. Compl. [#7] at ¶ 44; Second Am. Compl. [#24-1] at ¶ 44.)  Both Complaints also allege that class action notices were widely disseminated and the class administration process was ongoing until at least September 2018.  (First Am. Compl. [#7] at ¶ 44; Second Am. Compl. [#24-1] at ¶ 44.) Plaintiff's theory of its case is not that the initial or ongoing withholding by Defendant violated the contract but that Defendant's accounting and allocation of class action expenses at the close of the class action administration process breached the contract because Defendant failed to reimburse Plaintiff for the funds withheld in excess of Plaintiff's proportional responsibility.  (*See* Second Am. Compl. [#24-1] at ¶ 47 (Defendants' had a contractual right to withhold funds until they could be proportionally allocated based on processing of class claims), ¶ 73 (injury occurred when Defendant failed to accurately apportion indemnity obligations once the class action settlement administration was complete and indemnity obligations could be determined).)

Defendant attempts to point to matters outside of Plaintiff's pleadings in support of their limitations argument, directing the Court to a 2017 demand letter from Plaintiff's counsel to Defendant that is attached to Plaintiff's response to Defendant's motion to dismiss.  (*See* Demand Ltr. [#15-2] at ¶ 5–6.)  Defendant argues that this letter contradicts Plaintiff's theory that the contract was breached in 2019 when Defendant sent Plaintiff the letter allocating Plaintiff's proportionate share of class action expenses.  This argument fails for several reasons. First, in the posture of a motion to dismiss, the Court is limited to an evaluation of whether

Plaintiff's pleadings evidence the untimeliness of the breach of contract claim on their face. *See Songbyrd, Inc.*, 104 F.3d at 775 n.3. Defendant may reassert its limitations defense at summary judgment on a full evidentiary record. Second, even if Plaintiff's allegations of breach in 2017 define when the breach occurred, this case was still commenced well within the four-year statute of limitations. Defendant's motion to dismiss should be denied.

### III.  Conclusion

Having considered the parties' motions, Plaintiff's live and proposed pleadings, and the governing law,

**IT IS HEREBY ORDERED** that Defendant Billing Concept, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [#11] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint [#14] is **GRANTED**.

**IT IS FINALLY ORDERED** that the District Clerk file the Corrected Second Amended Complaint attached to Plaintiff's Supplemental Filing [#24-1].

SIGNED this 16th day of July, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE